RELIANCE BAGGING COMPANY *v.* ELECTRIC GIN COMPANY.

4-7646                                    187 S. W. 2d 724

Opinion delivered May 28, 1945.

*Reid & Evrard,* for appellant.

*James G. Coston* and *A. F. Barham,* for appellee.

SMITH, J.   This suit was brought by appellee, doing business as the Electric Gin Company, to recover damages for the failure to deliver a quantity of bagging, alleged to have been purchased from appellant, and from a judgment awarding damages is this appeal.

An order for 60 bales of second-hand sugar bag stock, dated February 11, 1941, was taken by L. R. Graves, a broker, and forwarded by him to appellant, which contained the recital that the order was subject to confirmation by appellant.   It contained the recital that the order was "subject to cancellation by notice on or before July 1, 1941."

Upon receipt of this order, forwarded to it by Graves, appellant wrote appellee, under date of February 13, 1941, as follows: "We regret that we are compelled to return the enclosed order tendered us as we do not

take conditional contracts. We will not have any difficulty selling our 1¾ lb. used sugar bag cloth at 8¾c per yd. delivered on straight sales. If you want us to confirm on this basis, let us know promptly. Awaiting your advice, we are, yours very truly, Reliance Bagging Co. Alvin Margolius.''

Thereafter Graves took a second order from appellee, dated February 27, 1941, for ''50 bales used bag cloth same as last year,'' which contained a direction, ''send drafts to consignment pay weekly as used. Final Payment 12/31/41.''

Graves appears to have retained this order in his possession for about 30 days before sending it to appellant. When received, appellant promptly advised that its supply of bagging of the kind ordered was exhausted, and that the order could not be accepted and filled.

It was some weeks after receipt of this letter from appellant before Graves advised appellee that the order would not be filled. The excuse offered by Graves for this neglect was that he attempted, on several occasions, to contact appellee, but without success. In the meantime, the price of this bagging was constantly and rapidly advancing and it was this difference in price for which appellee sued.

It is conceded, of course, that no cause of action arose out of the first order, dated February 11, 1941, as appellants' right to reject the order is not disputed. The theory on which appellee seeks to affirm the judgment in his favor is that appellant's reply contained a counter offer, which appellee accepted in the order dated February 27, 1941.

We think, however, that this is not true. In addition to ordering a different quantity of bagging, the second order proposed payment on a basis different from that on which appellant proposed to sell. Appellant proposed a delivery on ''straight sales,'' while appellee proposed to buy ''consignment pay weekly as used. Final payment 12/31/41.'' Appellant had not proposed to sell on those terms, and appellee had no right to alter the terms

on which appellant proposed to sell. In other words, the minds of the parties never met, and there was no contract.

Moreover, this order of February 27th did not purport to be an acceptance of a counter offer from appellant, and the case was not tried or submitted to the jury upon that theory. The court told the jury, without objection from either party, that: "The only question in this case for your determination is whether or not there was a ratification and acceptance of the order of February 27, 1941, by the defendant"; and on this issue the jury was told that: "In determining whether or not there was a ratification and acceptance of the order of February 27, 1941, by the defendant, you may take into consideration the period of time elapsing between the date of the receipt of the order and the time when plaintiff was notified of its rejection, together with all other facts and circumstances offered in evidence before you."

It is not questioned that upon receipt of the order of February 27th, appellant promptly advised Graves, who had sent it in, that the supply of bagging of the kind ordered was exhausted. Graves was not a salesman employed by appellant. He was a broker who took orders for bagging and other merchandise, some of which orders were sent to appellant, while other orders were sent to other dealers, and he was paid a commission on orders which were accepted and filled. At § 47, Ch. Sales, 46 Am. Jur. 236, it is said: "It is settled law that a mere offer to buy or sell, until accepted by the person to whom such offer is made, imposes no obligation upon either party. . . . The acceptance of an offer to buy or sell must be evidenced in some positive manner and by some act or conduct communicated to the offerer."

At § 43 E, Ch. Sales, 55 C. J. 78, it is said: "A contract of sale of a chattel or goods, like every other contract, becomes a contract binding on both parties when and only when through an offer to buy or sell and acceptance thereof there is a meeting of minds on all the essential elements of a sale and the terms of it, or, as otherwise expressed, when there is a distinct intention common to both parties as to the sale and purchase."

It is the law that the mere receipt of an offer to buy imposes no obligation to sell, and acceptance of such an offer is not to be implied from mere silence, on the contrary, failure to accept within a reasonable time implies a rejection of the offer, in which case no obligation rests upon either party.

Appellee concedes that this is the law, but insists that the law also is that the circumstances may be such that an acceptance is presumed from silence, and the case of *Cole-McIntyre Norfleet Co.* v. *Holloway,* 141 Tenn. 679, 214 S. W. 817, 7 A. L. R. 1683, is cited to sustain this contention. It was held in that case that assent to a contract by acceptance of an offer to buy may be evidenced by circumstances from which assent and acceptance may be inferred without actual acceptance of the order. But in the note of the annotator to the case, it was said:

"The reported case (*Cole-McIntyre-Norfleet Co.* v. *Holloway, ante* 1863) lays down the rule that where the circumstances surrounding the parties afford a basis from which an inference may be drawn from silence, acceptance of an offer may be inferred from silence, and applying it holds that a wholesale merchant who sends out drummers or agents to solicit orders for perishable articles and articles consumable in the use is in duty bound, if he does not wish to accept and fill the orders, to so notify his customers, and that if he fails to do so, silence for an unreasonable length of time will amount to an acceptance if the offerer is relying upon him for the goods. However, the court was careful to point out that the case was neither one where the agent was exceeding his authority nor one of an original offer unaccompanied by other circumstances, but on the other hand was one where the parties had been dealing with each other before and were dealing in due course at the time."

We think there are no special circumstances here which take the case out of the general rule that an offer to buy does not become a contract until the offer is accepted. Here Graves was not the agent or representative of appellant, except only that he was authorized and

permitted to receive orders as a broker and transmit them to appellant. But he had no authority to make completed sales. On the contrary, it was expressly stated in the orders which he transmitted that they were subject to approval and acceptance by appellant.

Appellant's letter to appellee herein copied, did not say that an unconditional order would be accepted, and was evidently not regarded by appellee as a counter proposition submitted for his acceptance. He testified that Graves came to his gin and solicited a new contract. Appellee was warned that the stock of bagging of the grade in question was limited, and appellee was warned that it might be exhausted unless an order was promptly sent in, and it was not until two weeks after the date of this letter that the second order was prepared for transmission to appellant, and even then was retained by Graves for 30 days before being mailed. Upon receipt of this second order, the broker was promptly notified by appellant that the stock of this bagging was exhausted. That the order dated February 27, 1941, was not an acceptance of a counter proposition from appellant is further shown by the fact that it did not propose to pay for the bagging on the terms contained in appellant's letter which were "on straight sales," while appellee's order proposed to pay for the bagging "weekly as used. Final payment 12/31/41." *Southern Cotton Oil Co.* v. *Frauenthal,* 145 Ark. 394, 224 S. W. 730.

We conclude, therefore, that appellant had never entered into a contract to sell bagging to appellee and the judgment must therefore be reversed and as the cause appears to have been fully developed, it will be dismissed.